UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:21-cr-20011-COOKE

UNITED STATES OF AMERICA

vs.

DAVID TYLER HINES,

      Defendant.
_____/

## FACTUAL BASIS FOR GUILTY PLEA

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

### *Overview of the Paycheck Protection Program*

1.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

2.    In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must

state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation to the lending institution showing their payroll expenses; typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

3. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

4. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

5. David Tyler Hines ("HINES" or the "Defendant"), a resident of Miami, Florida, was the authorized representative and manager or president of the following four companies: Cash in Holding LLC ("CIH"), Promaster Movers, Inc. ("Promaster"), Unified Relocation Solutions, LLC ("URS"), and We-Pack Moving LLC ("WPM") (together, the "Hines Companies"). In 2020, each of the Hines Companies maintained a bank account at Bank A in South Florida.

6. In April and May 2020, the Defendant submitted multiple applications to Bank A for PPP loans for each of the Hines Companies. These applications were submitted electronically by the Defendant from within the State of Florida to Bank A through computer servers that were

2

located outside the State of Florida. On each loan application, the Defendant identified himself as the manager and authorized representative of the business. In these applications, the Defendant falsely claimed that the Hines Companies had over 70 employees and monthly payroll of approximately $4 million in the first quarter of 2020. In truth and in fact, the Defendant did not have 70 employees and the bank records of the Hines Companies show monthly expenses of less than $200,000.

7. Based on the false and fraudulent loan applications for the Hines Companies, Bank A paid out over $3.8 million to the accounts of the Hines Companies. For example, on or about May 9, 2020, the Defendant falsely represented on an application for a PPP loan to Bank A that he had average monthly payroll for CIH of approximately $245,135. The SBA received the application from Bank A and guaranteed this loan. The Defendant knew that the monthly payroll amount was false and fraudulent when made. The Florida Department of Revenue requires employers to report records of wages paid to employees by Florida corporations as part of the payment of reemployment tax. The Florida Department of Revenue had no record of wage information paid to employees of CIH in the first quarter of 2020.

8. Based on the false and fraudulent loan application, on or about May 11, 2020, Bank A deposited approximately $794,835.00 into the CIH account at Bank A. Instead of using these funds for payroll, shortly thereafter, on May 18, 2020, the Defendant transferred approximately $318,000 in funds to a car dealership for the purchase of a Lamborghini Huracan. Bank records show the Defendant used these PPP proceeds for personal expenses and not for payroll expenses as claimed on the loan applications.

9. On or about May 19, 2020, the Defendant offered to apply for a PPP loan for Business B, a catering and food service business, in Miami, Florida. Business B was owned by

Coconspirator A. The Defendant and Coconspirator A agreed that the Defendant would complete the application in exchange for a portion of the PPP loan proceeds. The Defendant falsely claimed on a loan application submitted to a PPP lender that Business B had an "average monthly payroll" of $306,800. At no time has Business B had an average monthly payroll of as much as $306,800. The lender approved the PPP loan for $767,000 based on these false statements and the Defendant's false certification that the loan proceeds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments.

10. On or between July 4 and July 8, the Defendant advised Coconspirator B on how to complete a PPP loan application for Business A, a restaurant owned by Coconspirators A and B. The Defendant offered his assistance in exchange for a portion of the proceeds of the PPP loan for Business B. The Defendant knew that the amounts that Coconspirator B included on the application for the Business A loan were not supported by the actual payroll expenses of Business A. With the Defendant's guidance, Coconspirator B submitted a false application for Business A, which obtained a PPP loan for $57,750.

11. At no time was the Defendant an employee of either Business A or Business B. The Defendant knew that he was not entitled to a "finder's fee" under the terms of the PPP program but conspired with Coconspirator A and B to defraud PPP lenders into approving the loans with the intent of receiving a portion of loan proceeds.

12. The Defendant's actions in furtherance of the offense charged, including but not limited to the acts described above, were done willfully, knowingly, with the specific intent to violate the law, and not because of accident, mistake, or other innocent reason. The Defendant's actions were within the Southern District of Florida and in other Districts. Finally, the foregoing is a summary of the principal facts that constitute the legal elements of the offense of wire fraud.

This summary does not describe all of the evidence that the United States would present at trial or all of the relevant conduct that would be used to determine the Defendant's sentence under the Sentencing Guidelines. The Defendant acknowledges that the foregoing does not describe all of the Defendant's conduct relating to the offense charged, nor does it identify all the persons with whom the Defendant may have engaged in illegal activities.

DANIEL KAHN, ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

Date: 2/8/21    By: _____
EMILY SCRUGGS
TRIAL ATTORNEY

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 2/8/2021    By: _____
MICHAEL N. BERGER
ASSISTANT UNITED STATES ATTORNEY

Date: February 8, 2021    By: _____
ELIZABETH BLAIR
ATTORNEY FOR DEFENDANT

Date: 2/8/2021    By: _____
DAVID TYLER HINES
DEFENDANT